# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

TASHMA McFADDEN,

    Plaintiff,

v.

C.O. II BUTLER,
CHIEF OF SECURITY D. HANSEN,[1]
WARDEN KOPPEL and
CPL. FRASER,

    Defendants.

Civil Action No. TDC-16-0437

## MEMORANDUM OPINION

Plaintiff Tashma McFadden, currently incarcerated at the Federal Correctional Institution-Schuylkill in Minersville, Pennsylvania, has filed suit under 42 U.S.C. § 1983 alleging that Defendants Correctional Officer II ("C.O.") Tiara Butler, a correctional officer at the Chesapeake Detention Facility ("CDF") in Baltimore, Maryland; former CDF Chief of Security Donna Hansen; former CDF Warden Robert Koppel; and Corporal Susan Fraser, another CDF correctional officer, violated his constitutional rights by failing to protect him from harm while he was a pretrial detainee at CDF and was attacked and injured by another detainee. McFadden also alleges that he was improperly placed on administrative segregation for 12 days following the attack, and that C.O. Butler and Cpl. Fraser engaged in a civil conspiracy to deprive him of protection. As relief, McFadden seeks $800,000 in punitive damages for negligence, pain, and suffering. Presently pending before the Court is a Motion to Dismiss, or,

---

[1] McFadden originally filed suit against "D. Hanson," but the proper spelling is "Hansen." The Clerk is directed to amend the docket to reflect the proper spelling of Defendant Hansen's name.

in the Alternative, for Summary Judgment filed by all Defendants except Cpl. Fraser, who was not properly served. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, Defendants' Motion, construed as a motion for summary judgment, is GRANTED.

## BACKGROUND

On May 17, 2015, McFadden was a federal pretrial detainee housed at CDF in a unit known as Echo Pod Quad 4. At approximately 8:01 p.m., McFadden was speaking on a telephone in the unit when he was attacked from behind by another detainee, David Braxton. According to a surveillance video of the incident, Braxton approached McFadden while McFadden's back was turned to the room, then rapidly slashed at him with an unidentified weapon approximately eight times. C.O. Butler, assigned as a control center officer and able to view a live surveillance feed of the incident, immediately notified CDF staff of the attack and called over an intercom for McFadden to run to safety. McFadden briefly struggled with Braxton, then managed to escape by running out a nearby door before it was closed.

McFadden, who was stabbed multiple times, was transported to Johns Hopkins Hospital, where nine staples were placed in the side and back of his head. Pursuant to CDF policy, a "Notice of Inmate Rule Violation" was issued to Braxton, McFadden, and Keith Demby, another inmate assaulted by Braxton in the same incident. Butler Decl. ¶¶ 8-9, Mot. Dismiss Ex. 3, ECF No. 31-4. According to McFadden, Warden Koppel and Chief of Security Hansen reviewed the surveillance footage of the attack, then placed McFadden in administrative segregation for 12 days following the incident. On June 2, 2015, McFadden appeared at a hearing on the alleged rule violation and was found not guilty because the video showed that he was merely the victim of an assault.

Nearly five months after the assault, on October 5, 2015, McFadden filed an "Informal Inmate Complaint Form," stating that he was stabbed six times on May 17, 2015 and that since then he had "complained about severe headaches, insomnia, weight loss and depression and received only Tylenol from medical." CDF Records at 2, Mot. Dismiss Ex. 1, ECF No. 31-2. It is not clear if McFadden filed a more formal complaint under Maryland's Administrative Remedy Procedure, but it is clear that McFadden never filed a complaint with Maryland's Inmate Grievance Office ("IGO").

The CDF Internal Investigative Division ("IID") assigned Detective Bruce Jenkins to investigate the assault on McFadden. When Jenkins interviewed McFadden on December 11, 2015, McFadden told him that he did not want to pursue criminal charges against Braxton. McFadden said he was "not sure" whether Braxton was the individual who assaulted him. IID Report at 12, Mot. Dismiss Ex. 4, ECF No. 31-5. Instead, McFadden stated he wanted to press charges against the facility. On December 18, 2015, Detective Jenkins filed charges in the District Court for Baltimore City, Maryland against Braxton for Second Degree Assault.

## DISCUSSION

In their Motion, Defendants seek dismissal of the Complaint or summary judgment in their favor on several grounds, including: (1) McFadden failed to exhaust available administrative remedies; and (2) McFadden fails to state a valid claim for relief under § 1983. Because the Court finds that Defendants are entitled to summary judgment on these grounds, the Court need not address Defendants' remaining arguments.

### I. Legal Standard

Because Defendants have submitted evidence for the Court's review, that evidence includes critical evidence such as the surveillance video, and McFadden has not requested or

demonstrated a need for discovery, the Motion is construed as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).

The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). However, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to preclude summary judgment. *Id.*

## II. Exhaustion of Administrative Remedies

Defendants assert the failure to exhaust administrative remedies as an affirmative defense, arguing that McFadden did not file a timely administrative complaint based on the May

17, 2015 incident. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). A prisoner's failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of proving that the prisoner had available remedies but failed to take advantage of them. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This exhaustion requirement serves a valuable function by "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1858 (2016) (An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is

5

practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859-60.

Although CDF houses federal pretrial detainees, it is a detention facility overseen by the Maryland Department of Public Safety and Correctional Services ("DPSCS"). *See* https://www.dpscs.state.md.us/locations/mcac.shtml (last visited Mar. 15, 2018);[2] *see also Ray v. Koppell*, No. DKC 13-3480, 2015 WL 5136803, at *1-2 (D. Md. Aug. 31, 2015). The DPSCS has established the Administrative Remedy Procedure ("ARP") as the administrative process that must be exhausted by prisoners or detainees housed in the Maryland facilities it operates. First, a prisoner must file a complaint, known as an "ARP," with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs. ("COMAR") §§ 12.07.01.04 – 05.A. (2017). Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. COMAR § 12.07.01.05.C. If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210.

McFadden asserts that he "filed all administrative remedies." Opp'n Mot. Dismiss ¶ 1, ECF No. 34. McFadden points to the Administrative Remedy Index, submitted by Defendants, to corroborate his filing of two grievances related to the assault. The index shows entries for two grievances under McFadden's name for October 7, 2015, including one for "alleged assault by detainee," but does not specifically state whether these complaints were ARPs or some other sort of inmate complaint. CDF Records at 3. Defendants have also submitted an "Informal Inmate

---

[2] The Court takes judicial notice of this information pursuant to Federal Rule of Evidence 201.

Complaint Form" completed by McFadden on October 5, 2015, in which he complains of the medical treatment he has received since the assault, but it is not clear whether the informal complaint is in addition to or duplicative of the entries on the Administrative Remedy Index. *See id.* at 2.

Even assuming, *arguendo*, that one of these entries refers to an ARP, it was neither filed within 30 days of the incident nor appealed to the IGO. McFadden does not claim that he pursued his claims through all levels of the administrative process, including the IGO. Defendants have filed a declaration by Russell Neverdon, Sr., Executive Director of the IGO, who attests that there is no record that McFadden filed a complaint or grievance with the IGO about the May 17, 2015 assault at CDF. In the absence of evidence contradicting Defendants' evidence that McFadden did not submit a timely ARP and appeal it to the IGO, the Court finds that McFadden failed to exhaust administrative remedies, and that Defendants are therefore entitled to summary judgment.

### III. Failure to Protect

Even if McFadden had properly exhausted administrative remedies, the Court would still grant summary judgment because he has failed to establish a genuine issue of material fact on his § 1983 claims. A § 1983 claim requires a deprivation of federal rights "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, McFadden asserts that Defendants violated his constitutional rights by failing to protect him from the assault by Braxton. A failure-to-protect claim brought by a pretrial detainee constitutes a due process claim under the Fourteenth Amendment to the United States Constitution. *Smith v. Sangamon Cty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013). "Due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to the convicted prisoner."

*Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)); *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). Thus, the standards for a Fourteenth Amendment failure-to-protect claim are the same as those for a comparable claim brought by a convicted prisoner under the Eighth Amendment. *See, e.g., Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013); *Kamara v. Prince George's County Dep't of Corr.*, No. ELH-15-3952, 2017 WL 735549, at *12 (D. Md. Feb. 24, 2017) (collecting cases).

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates," including protecting them "from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To prove a prison official's liability for failing to protect a prisoner from other inmates, prisoner plaintiffs must satisfy a two-part inquiry, consisting of objective and subjective prongs. *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

For the objective prong, the prisoner "'must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury' or a substantial risk thereof." *Id.* (quoting *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014)). This inquiry "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

To meet the subjective prong, a plaintiff must establish that the defendant had a "sufficiently culpable state of mind," consisting of "deliberate indifference to inmate health and

8

safety." *Raynor*, 817 F.3d at 127-28 (quoting *Farmer*, 511 U.S. at 834). Negligent failure to protect an inmate from an attack by another inmate does not violate the inmate's constitutional rights. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). To establish deliberate indifference requires a showing that the official actually "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *Raynor*, 817 F.3d at 128. A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. A prison official aware of such a risk to an inmate fulfills the constitutional obligation by taking reasonable steps to avert harm, even if the harm still occurs. *Id.* at 844-45. "In failure to protect cases, 'prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm.'" *Raynor*, 817 F.3d at 128 (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)). However, a correctional officer's failure to intervene in a beating can form the basis of section 1983 liability if "the officer had a reasonable opportunity to act and 'simply refused to do so.'" *Id.* (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).

McFadden does not allege, or provide evidence to support a finding, that there was any basis for CDF correctional officers to be aware that Braxton could be expected to attack McFadden. There is no evidence in the record that Braxton had a history of violence against detainees in general or McFadden in particular. There is no evidence that Braxton had threatened McFadden, that he was an identified enemy of McFadden, or that McFadden had expressed any concern for his safety to Defendants. Accordingly, there is no basis to support a finding that Defendants were aware of a substantial risk to McFadden's safety, as would be necessary to support a failure-to-protect claim. The Court agrees with the proffered opinion of

Hansen, the CDF Chief of Security, that "[b]ased on the surprise nature of the attack and absence of any advance knowledge, no correctional officer, even if present in the day room at the time, could have prevented the attack." Hansen Decl. ¶ 10, Mot. Dismiss Ex. 2, ECF No. 31-3.

The evidence also establishes that the attack occurred so suddenly and was completed so quickly that Defendants did not have a reasonable opportunity to intervene to protect McFadden. The surveillance video definitively establishes that Braxton attacked without warning, that the majority of his blows occurred within the first five seconds, and that the entire attack was over in approximately 10 seconds. It is undisputed that no correctional officer was inside the unit at the time of the assault, and there was only one correctional officer, Cpl. Fraser, close enough to enter. Thus, although McFadden argues that Cpl. Fraser should have entered the unit to stop the assault, where the attack was over within seconds, there was simply not enough time for Cpl. Fraser or any other correctional officer to make a difference. The Court concludes that the attack was completed so quickly that the correctional officers could not reasonably have been expected to successfully enter the unit and stop or curtail the attack before it was completed.

Even if there had been time, where Braxton was armed with an unidentified but clearly dangerous weapon at the time of the assault, and the surveillance video shows numerous detainees in the vicinity of the attack, the failure of a single correctional officer to intervene before others arrived would not have constituted deliberate indifference to detainee safety. *See Winfield v. Bass*, 106 F.3d 525, 532-33 (4th Cir. 1997) (finding no duty for correctional officers to intervene immediately in a fight between inmates when one had a dangerous weapon); *Arnold v. Jones*, 891 F.3d 1370, 1373-74 (8th Cir. 1989) (finding no duty to intervene when correctional officers were "vastly outnumbered" by inmates).

Indeed, there is evidence that the correctional officers' initial response to the attack assisted McFadden to get to safety. According to C.O. Butler, when the attack began, "I immediately called a Code 10-10 (*i.e.*, inmate fight), and called over the intercom for Mr. McFadden to run out of Echo Pod before I closed the door." Butler Decl. ¶ 6. McFadden does not dispute this account. Under the circumstances, providing McFadden with a route to escape the assault was a reasonable initial response to the attack. Accordingly, CDF officials were not deliberately indifferent for failing to intervene in the assault before it ended. Any deficiency in the response would, at worst, constitute negligence, which is insufficient to establish a constitutional failure-to-protect claim. *See, e.g., Farmer*, 511 U.S. at 835.

To the extent that McFadden asserts that his placement in administrative segregation after the assault violated his constitutional rights, that claim fails. Read liberally, the Complaint alleges a violation of McFadden's right to due process under the Fourteenth Amendment. *See Dilworth v. Adams*, 841 F.3d 246, 251-52 (4th Cir. 2016). First, there is no evidence that such a claim was administratively exhausted. Second, although a pretrial detainee, such as McFadden, is entitled to a certain amount of due process before being "punished" by prison officials, *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979), courts have routinely held that administrative segregation prior to a prison hearing does not violate the Constitution. *See, e.g., Dilworth*, 841 F.3d at 255 ("[A] jail may take immediate preventative action to segregate a detainee after a fight or disruption."). According to Chief of Security Hansen, all three individuals involved with the assault were issued "Notices of Inmate Rule Violation" pursuant to CDF policy and, presumably, placed in administrative segregation pending a hearing. Hansen Decl. ¶ 13. McFadden was released back to the general population once the hearing officer determined that he was not a

participant in the assault. Accordingly, even if this claim were properly exhausted, McFadden's claim would fail as a matter of law.

**IV.     Civil Conspiracy**

McFadden also alleges a civil conspiracy under § 1983, based on the assertion that because Cpl. Fraser was about to conduct security rounds in the unit at the time of the attack, and C.O. Butler told her to step back from the unit door once the security code for an inmate fight was called, these facts demonstrate that C.O. Butler and Cpl. Fraser conspired against him to violate his constitutional rights. To establish a civil conspiracy claim under § 1983, a plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 658 (2017) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 357-58 (4th Cir. 2014)). "While they need not produce direct evidence of a meeting of the minds, [plaintiffs] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

As discussed above, the evidence does not support a finding that Defendants were aware of a substantial risk to McFadden's safety within a time frame that permitted them to take any meaningful action. McFadden's assertion that C.O. Butler and Cpl. Fraser conspired to delay Cpl. Fraser's entry into the unit is entirely speculative. Notably, the only evidence on this point is C.O. Butler's uncontroverted assertion that she signaled Cpl. Fraser to step back from the door to the unit in order to allow McFadden to escape from the unit unimpeded. McFadden then, in

12

fact, successfully exited the unit. There is no evidence that the two correctional officers had any reason to take collective action to allow harm to McFadden, that they reached any agreement on how to respond to the attack, or that they had sufficient time to do so. As discussed above, the evidence is undisputed that Defendants had no advance warning that the attack would occur. Under these circumstances, no reasonable factfinder could conclude that the evidence established a civil conspiracy to cause McFadden injury or deprive him of his constitutional rights. *See Walters v. Cty. of Charleston*, 63 F. App'x 116, 118 & n.3 (4th Cir. 2003) (affirming the district court's grant to defendants of judgment as a matter of law on a civil conspiracy claim brought on behalf of a prisoner against correctional officers who caused the death of a prisoner because there was no evidence of any intentional effort to choke the prisoner); *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (holding that defendants were entitled to judgment as a matter of law on a civil conspiracy claim brought by prisoner alleging excessive force by prison officials when no freestanding constitutional violation was proven).

**V.     Cpl. Fraser**

Because Cpl. Fraser was not properly served, and the deadline for service has passed, the claims against her may be subject to dismissal. Fed. R. Civ. P. 4(m) (stating that a court "must dismiss the action" against a defendant if proper service is not filed within 90 days). The Court notes that, for the reasons stated above, even had there been proper service, there are no viable claims against Cpl. Fraser. The Court therefore dismisses all claims against Cpl. Fraser. *See* 28 U.S.C. § 1915(e)(2) (2012).

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED. A separate Order shall issue.

Date: March 16, 2018

THEODORE D. CHUANG
United States District Judge